54 CCPA

**Application of Kirk H. LOW, John A. Graham, Lavert F. Sneed and Claud W. Smith.**

**Patent Appeal No. 7694.**

United States Court of Customs and Patent Appeals.

Feb. 9, 1967.

John H. Sutherland, St. Louis, Mo., for appellants.

Joseph Schimmel, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

KIRKPATRICK, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection under section 103 of claims 19, 20, 24 and 25, the only claims now in application serial No. 81,518, filed January 9, 1961.

The application concerns a work handling system for transferring trays of small parts from one work station to another as in the manufacture of articles such as shoes. The system includes a main conveyor loop having driven endless belt portions for carrying trays placed thereon. At each of a plurality of transfer points along the endless belt portions there is a take-off conveyor for transferring trays from the main conveyor to a work station, a return conveyor adjacent thereto for carrying trays from the work station back to the main conveyor, and an automatic take-off device for diverting trays from the main conveyor onto the take-off conveyor.

The take-off conveyors are gravity-operated roller conveyors extending downwardly from the main conveyor and the return conveyors are similar but extend downwardly to the main conveyor. Thus the take-off conveyors deliver the trays to locations at the work stations which are lower than the locations at which the return conveyors must receive the trays to be returned. A pair of vertically spaced turntables may be provided at each work station with the lower turntable provided to receive trays from the take-off conveyor and the upper turntable adapted to load trays placed thereon by a worker onto the starting end of the return conveyor.

The take-off devices positioned along the main conveyor are in the form of vertically movable hooks which are automatically controlled. If a passing tray is destined for a work station associated with a particular take-off conveyor the hook at that position is brought into engagement with the tray so that continued movement of the main conveyor causes the tray to swing about the hook onto the take-off conveyor.

Claim 24, treated as illustrative in appellants' brief, reads:

24. In a work handling system for moving material to and from a work

* Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

station located in spaced relationship with a main conveyor, the improvement which comprises, a gravity conveyor sloping downwardly from the main conveyor and extending to a position adjacent the work station, and another gravity conveyor extending from a position adjacent the work station and sloping downwardly toward said main conveyor, there being a substantial difference in the elevation of said gravity conveyors at their position adjacent said work station.

| Mabee | 1,710,779 | April 30, 1929 |
| Marsh | 2,818,161 | December 31, 1957 |
| Burt | 3,018,873 | January 30, 1962 |
| | | (filed April 7, 1959) |
| Wales et al. | | |
| (Wales) | 3,075,653 | January 29, 1963 |
| | | (filed December 12, 1958) |

Claim 25 is dependent on claim 24, adding a recitation of the vertically spaced turntables. The combination of the main conveyor with the take-off and return conveyors is recited in claim 19, while claim 20, which is dependent thereon, adds a recitation of the hook-type device for diverting trays from the main conveyor to the take-off conveyor.

The examiner and the board relied on the following prior art:

Mabee discloses package handling apparatus wherein a vertical spiral chute delivers packages to a wrapping station from various floors of a store. At the station is a lower, motor-driven turntable for distributing packages to be wrapped to workers stationed thereabout, a downwardly inclined chute for conveying packages by gravity from the vertical spiral chute to the turntable, a second motor-driven turntable for receiving wrapped packages from the workers disposed above the first turntable, and a second downwardly inclined chute for conveying wrapped packages from the second turntable to a label-pasting table therebelow.

Marsh discloses a tray-conveying system for delivering meals to customers in a restaurant. It includes a continuously driven main conveyor of the endless belt type for conveying filled trays from the kitchen and mechanism for diverting trays automatically from the main conveyor to selected ones of a plurality of supplemental conveyors extending to delivery tables at the customers' tables. The supplemental conveyors incline downwardly from the main conveyors and are made up of parallel anti-friction rolls acting through gravity. The automatic tray diverting mechanism includes hooks positioned at the main conveyor ahead of the supplemental conveyors to engage arms extending from trays so that the main conveyor causes a selected tray to swing about the hook and onto the adjacent discharging conveyor.

The Burt patent discloses a conveyor system including a main roller conveyor and several branch conveyors which latter are of the gravity-operated roller type for removing articles diverted from the main conveyor.

Wales relates to a system for distributing material-carrying sleds to a plurality of stations in a warehouse. The system includes a main conveyor loop for transporting the sleds from a receiving department to one of a plurality of stations along the loop and a secondary conveyor loop with several sidings connected to the main loop at each station to receive sleds diverted from the main conveyor and return empty sleds thereto, and automatic sled diverters "of a known type" at each station for selectively transferring sleds from the main conveyor to the secondary conveyor. Each

secondary conveyor also includes an order pickup siding which may accumulate sleds until it is "about half full."

The examiner specifically rejected claims 19 and 24 as obvious over Wales in view of Burt, claim 20 with claim 19 further in view of Marsh, and claim 25 over Wales in view of Mabee. The board specifically recognized the rejection as being on those grounds and expressly affirmed the examiner's decision.

As is stated by the board, the "concept of transporting articles along a main conveyor, diverting the articles to branch conveyor means and returning the articles from the branch conveyor means to the main conveyor at the position of diversion is disclosed by Wales et al." Appellants do not appear to argue to the contrary. Rather, they urge that "the heart of the case" lies in the failure of the Patent Office tribunals "to give cognizance to" the novelty of "the *concept* of harnessing gravity to move materials in *opposite* directions *both from and to* a main conveyor *and a given work station.*"

That the Patent Office did recognize the presence of novelty over the art of record is plain from the fact that the rejection is based only on obviousness of the claimed structure over that art. We are convinced that the holding of obviousness is correct. Burt's showing of gravity operated branch conveyors suggests to one skilled in the art that such gravity conveyors be used in place of the branch conveyors of Wales to convey articles back and forth between the Wales main conveyor and a work station.[1] It would be obvious to such a person contemplating use of gravity conveyors that the work station end of the take-off conveyor would have to be lower than the main conveyor and that the loading end of the return conveyor at the work station would have to be higher. With regard to a statement in claim 19 that diverted trays accumulate on the take-off conveyors, such feature is disclosed in Wales. Thus, the rejection of claims 19 and 24 will be affirmed.

As to claim 20, appellants do not appear to urge that the additional recitation of the hook means for diverting the articles from the belt conveyor onto the take-off conveyor of claim 19 constitutes a limitation imparting patentability to the claim. In any event, it would clearly be obvious to employ the hook means of Marsh as the diverter "of known type" described in Wales to perform the same function required by both Wales and appellants.

In rejecting claim 25 on Wales in view of Mabee, the examiner stated it would be obvious to a person skilled in the art to use work tables and vertically spaced turntables as employed by Mabee at the work stations in the branch conveyor loops of Wales. In affirming, the board held that Mabee's use of gravity chutes from a main conveyor to a lower work station turntable and from an upper turntable to another station would suggest to the "routineer in the art" that Wales be modified to provide the claimed structure with its gravity conveyors for take-off and return of articles to and from vertically spaced turntables at the work stations. We agree with both the examiner and the board, further noting that this claim merely adds to its base claim 24 the spaced turntables clearly taught for use in corresponding surroundings by Mabee.

Appellants take the position that the board emphasized the Mabee patent and apparently regard its reference to the gravity channels therein as suggesting the use of gravity branches in the same relationship to the main conveyor as amounting to a new rejection of claims 19, 20 and 24. However, we are satisfied that the board affirmed the rejection of those claims as made by the examiner and are convinced that it properly did so. Hence, it is unnecessary to consider whether additional valid grounds of re-

---

1. That it is obvious to interchange power driven and gravity type conveyors is evi- denced by a statement in Burt that his main conveyor may be of either type.

**1022**

jection may be apparent from the board's comments.

The decision of the board is affirmed.

Affirmed.

SMITH, J., took no part in the decision of this case.